## State of Vermont v. Allen Yudichak

[561 A.2d 407]

No. 87-205

Present: **Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned**

Opinion Filed April 14, 1989

*Thomas M. Kelly, Washington County Deputy State's Attorney*, Barre, for Plaintiff-Appellee.

*Kurrle & Halpert*, Montpelier, for Defendant-Appellant.

**Peck, J.** Defendant appeals his conviction, following a trial by jury, of two violations of 23 V.S.A., chapter 13, subchapter 13: operating a motor vehicle while he was under the influence of intoxicating liquor, 23 V.S.A. § 1201(a)(2), with death resulting, 23 V.S.A. § 1210(e) (DUI/Fatal), and, secondly, operating a motor vehicle "in a careless or negligent manner" with death resulting. 23 V.S.A. § 1091(c). We affirm.

The appeal raises three issues for our review. Defendant first claims that his right to be heard (testify) on his own behalf under Chapter I, Article 10 of the Vermont Constitution was chilled by certain statements of the trial judge. Second, he contends that

the trial judge gave an erroneous instruction to the jury on the element of proximate cause. Finally, he argues that his right to a speedy trial was violated by substantial delays not attributable to him.

Viewing the record evidence in the light most favorable to the State as the prevailing party, and excluding the effect of any modifying evidence, State v. Robillard, 146 Vt. 623, 625, 508 A.2d 709, 711 (1986), the following facts appear. During the afternoon of April 29, 1984, the volunteer fire brigade of Norwich University, Northfield, Vermont, responded to a call for assistance in extinguishing a fire in Roxbury. Defendant was the only volunteer present who was certified to drive the brigade firetruck. He proceeded to do so, with several of his fellow volunteers also in the vehicle. The evidence indicated that he was then under the influence of intoxicating liquor. En route to their destination, defendant lost control of the truck. The truck overturned and three of the volunteers were killed; five others were injured.

The defense sought to establish that the firetruck was forced off the road as a result of the negligent driving of another motorist in an oncoming car. The jury, however, found the defendant guilty as charged; judgment was entered on the verdict and this appeal was timely filed. We consider the issues seriatim in the order presented.

## I.

At the conclusion of an earlier interlocutory appeal by the State in the case now before us on its merits, this Court affirmed a ruling by the trial court suppressing the results of a blood-alcohol test to which defendant had submitted. State v. Yudichak, 147 Vt. 418, 519 A.2d 1150 (1986).

Defendant now claims that certain advisory statements made on the record (but not before the jury) by the trial judge improperly chilled his constitutional right to take the stand and be heard in his own defense. The statements related to the suppressed results of the blood test, and allegedly were to the effect that the federal rules established in Harris v. New York, 401 U.S. 222 (1971), and in United States v. Havens, 446 U.S. 620 (1980), would probably apply in the event defendant elected to testify.

Defendant's claim is raised under Chapter I, Article 10 of the Vermont Constitution. Defendant would have us apply the

Vermont standard, used to protect the right of the defendant to testify in his own behalf, which proscribes the use of the more permissive federal rule established in *Havens*. See, e.g., *State* v. *Brunelle*, 148 Vt. 347, 353, 534 A.2d 198, 203 (1987). From scrutiny of the transcript we note that the trial judge made reference to *Harris* and not to *Havens*. Further, it appears that defendant has not preserved this issue for appeal. See *State* v. *Mecier*, 145 Vt. 173, 177, 488 A.2d 737, 740 (1984) (errors not objected to or otherwise raised at trial are not to be reviewed on appeal). Neither does defendant's right to testify, as framed here, cause us to examine the issue sua sponte, as plain error. Plain error requires a finding of error "so grave and serious as to strike at the very heart of defendant's constitutional rights . . . ." *Id.* at 178, 488 A.2d at 741. Given that the only reference made by the court is to *Harris*, there is no error.

The rules developed by the *Harris* and *Havens* decisions provide prosecutors with latitude in the use of otherwise suppressed evidence, for the purpose of impeaching a defendant if he testifies contrary to the suppressed matter. To the extent that the federal standard in *Harris* applies to testimony of a defendant on direct examination, it will also apply in Vermont, and does not violate the Vermont Constitution. *State* v. *Brunelle*, 148 Vt. at 353, 534 A.2d at 203. An indication by the judge that *Harris* may have applied on defendant's direct examination was not a threat, but rather was a statement of the law. No error is demonstrated by the court's mention of the case.

## II.

■ Whether the jury was properly charged on the element of proximate cause is also before us on appeal. At trial defendant argued that another driver in an oncoming vehicle forced the firetruck off the highway. Defendant contends that the jury instruction given by the judge reflected a civil proximate cause standard and would result in a conviction regardless of an intervening cause of the accident. We do not agree.

This Court has not previously defined the element of causation to be used in cases of DUI/Fatal or careless or negligent driving with death resulting. As in all other criminal offenses, the common law standard of direct causation applies. Thus, while manslaughter and DUI/Fatal do not necessarily contain the same ele-

ments, *State* v. *Poirier,* 142 Vt. 595, 599, 458 A.2d 1109, 1111 (1983), the element of causation is essentially the same.

Vermont has consistently applied a direct causation standard in criminal offenses. One cannot be convicted of manslaughter in the presence of an intervening cause of death, unless that intervening cause is found to be a natural result of one's acts. See *State* v. *Rounds,* 104 Vt. 442, 453, 160 A. 249, 252 (1932). "[I]f death does not follow from the act of the accused, he is not in law a murderer." *State* v. *Wood,* 53 Vt. 560, 566 (1881). The jury must, therefore, find that the act or natural result of the act of the defendant is *the* cause of death; not merely *a* cause of death. See *People* v. *Scott,* 29 Mich. App. 549, 556-58, 185 N.W.2d 576, 580-81 (1971).

An "efficient intervening cause" of death, see *Rounds,* 104 Vt. at 448, 160 A. at 250, that is not the result of defendant's acts would require a verdict of not guilty. However, the natural result of unlawful driving may include failure to adequately respond to traffic conditions. Accordingly, where defendant's unlawful act is established in the chain of direct legal causation he is criminally responsible for the course of events which naturally follow from that act, unless the act of another "break[s] the chain of causation of the original negligent actor." *State* v. *Hollingsworth,* 77 N.C. App. 36, 39, 334 S.E.2d 463, 466 (1985).

After careful consideration of the instruction as a whole, see *State* v. *Chambers,* 144 Vt. 377, 382, 477 A.2d 974, 978 (1984), we conclude that the judge's charge to the jury properly reflected this standard. The pertinent instruction stated:

> [I]f you also conclude that there was an independent intervening cause or independent efficient intervening cause . . . that actually caused the accident, you must find the Defendant not guilty, even though you're satisfied that he was operating either under the influence or in a careless and negligent manner. . . . [T]here is evidence in the case and argument to the effect that some other driver's conduct caused the accident or occurrence . . . that resulted in the truck rolling over that caused the death of three persons. If you find that such another driver was aware of the existence of a potential danger created by Mr. Yudichak, and that thereafter that other driver negligently or unlawfully brought about this accident, then you must find that Mr. Yudichak did not

cause the accident or the occurrence, as the case may be, and that he's not guilty of driving while under the influence, or careless and negligent operation with death resulting.

This instruction required direct causal connection between the unlawful acts of defendant and the firetruck rolling over. It also clearly stated that no guilty verdict may be issued where the course of events is initiated or interrupted through the actions of another driver, whether or not defendant was driving unlawfully. We conclude that the instruction constituted a "charge fully and correctly upon each point indicated by the evidence, material to a decision of the case . . . ." *State* v. *Drown,* 148 Vt. 311, 312-13, 532 A.2d 575, 576 (1987) (quoting *State* v. *Brisson,* 119 Vt. 48, 53, 117 A.2d 255, 258 (1955)).

## III.

Finally, defendant seeks review of the trial court's denial of his motion to dismiss, based on an alleged violation of his Sixth Amendment right to a speedy trial under the United States Constitution and the comparable clause of the Vermont Constitution, Chapter I, Article 10. Defendant does not, however, indicate whether there is any difference between these rights. In the past, speedy trial rights have been treated as the same under either constitution. However, the differences have not been "squarely and throughly decided." *State* v. *Dean,* 148 Vt. 510, 515, 536 A.2d 909, 913 (1987). Nor has Chapter I, Article 10 been adequately discussed here for us to differentiate between them at this time. Therefore, we will treat the claim as one arising only under the federal constitution. See *State* v. *Settle,* 141 Vt. 58, 61, 442 A.2d 1314, 1315 (1982) (we need not consider claims on appeal which are inadequately briefed).*

"[F]our factors . . . are relevant in determining when such a denial has occurred: the length of the delay, the reason for the delay, defendant's assertion of his or her right, and prejudice to

---

* We have previously "decline[d] to adopt, for purposes of appeals, the four pronged test applicable to pretrial level delays set forth . . . in *Barker* . . . ." *State* v. *Hall,* 145 Vt. 299, 307, 487 A.2d 166, 171 (1984). That opinion was written before the United States Supreme Court's ruling in *United States* v. *Loud Hawk,* 474 U.S. 302, 326 (1986), which adopted the *Barker* test for review of appellate delays. We recognize the federal standard, without reaching a decision on the test under the Vermont Constitution.

the defendant." *State* v. *Recor,* 150 Vt. 40, 42, 549 A.2d 1382, 1384 (1988).

"Although the first factor to consider, length of delay, is not dispositive of the constitutional question, . . . as a threshold matter this Court demands an accurate determination of the time elapsed." *State* v. *Williams,* 143 Vt. 396, 401, 467 A.2d 667, 669 (1983). Defendant claims that the delay at issue accrued from the time the State moved the trial court to grant an interlocutory appeal on an evidentiary matter, see *Yudichak,* 147 Vt. 418, 519 A.2d 1150, and continued through the date of this Court's decision.

Excluded from the computation of time, however, are delays attributable to pretrial motions made by the defense. *State* v. *Williams,* 143 Vt. at 401, 467 A.2d at 670. Defendant filed a motion to suppress the State's evidence in September 1984, which began the interlocutory appeal sequence and included defendant's motion to dismiss the interlocutory appeal. That motion by the defense was denied April 11, 1985. We will not consider as prejudicial delay the six months from the date of defendant's first pretrial motion through resolution of defendant's motion to dismiss. A.O. 5, § 4(a). Even though defendant did not initiate the interlocutory appeal, and indeed, sought to dismiss it, the appeal was a "proceeding concerning the defendant." *Id.;* see also *State* v. *Trombly,* 148 Vt. 293, 299, 532 A.2d 963, 967 (1987). The delay, as estimated by defendant, was 23 months. Our tally is approximately 17 months. The delay itself, however, merely operates to trigger inquiry into the three remaining factors. *Williams,* 143 Vt. at 401, 467 A.2d at 669.

The fourth factor, and the most important, is whether defendant has been prejudiced as a result of delay. *State* v. *Bristol,* 143 Vt. 245, 249, 465 A.2d 278, 280 (1983). Defendant is required to "present any specific claims of prejudice." *Williams,* 143 Vt. at 407, 467 A.2d at 672. As defendant points out in his brief, prejudice most often is manifest in three forms: lengthy pretrial incarceration, the personal anxiety wrought upon defendant, and the impact of the delay upon defendant's ability to prepare an adequate defense. *Barker* v. *Wingo,* 407 U.S. 514, 532 (1972). None of these forms of prejudice are present in this case to the extent that defendant's right to speedy trial was violated.

Pretrial incarceration is not at issue here. Defendant was released on his own recognizance, and completed his college educa-

tion during the pending litigation. Defendant does argue that the delay at trial caused him undue personal anxiety including the stigma of being an accused felon and the burden added by press coverage of the unfortunate accident. Standing alone, such burden does not constitute prejudice sufficient to dismiss the charges against him. *Recor,* 150 Vt. at 42-43, 549 A.2d at 1385. Undoubtedly, the pending proceeding as well as the deaths of his classmates weighed heavily upon defendant. Nonetheless, defendant was able to complete his post-secondary degree and obtain employment in his native state, New Jersey. While defendant may have been subjected to the pressures of the Vermont proceedings, even subsequent to conviction, his employer in New Jersey had no knowledge of the entire course of events.

Defendant contends that his ability to prepare an adequate defense to the charges was impeded by the delay. He cites three examples of witnesses whose testimony was useless to defense allegedly as a result of the delay. One, a witness for the State, died prior to trial, and a statement taken from him was ruled inadmissible as hearsay evidence. Two other witnesses allegedly suffered impaired recall of the details surrounding the accident. In reviewing the lapses in testimony cited by defendant, it is not evident that the witnesses could have testified to the facts allegedly forgotten or even that the witnesses, had they remembered details desired by defendant, would have strengthened the defense.

Therefore, while there was some delay present, defendant has not shown prejudice to his case. In considering the remaining two factors relevant to a denial of a speedy trial motion, we find no support for defendant's claims. Given the importance of the issue considered and the State's reasonable diligence in adhering to procedural rules, no bad faith can be attributed to the State in raising the interlocutory appeal. See *United States* v. *Loud Hawk,* 474 U.S. 302, 316 (1986). Moreover, it is not at all clear why, in the face of such delay, defendant did not seek to preserve testimony through deposition or move for an immediate trial. Defendant claims to have asserted his right to speedy trial through repeated motions to dismiss, based on this alleged constitutional violation. We discern a difference between urging dismissal of the case and asserting one's right to the progress of the trial.

There is delay here which is directly attributable to the court system. Such delay is weighed against the State, not defendant. *Barker,* 407 U.S. at 533; *State* v. *Franklin,* 136 Vt. 568, 570, 396

A.2d 138, 139 (1978). Nevertheless, we are particularly reluctant to assign great prejudicial weight to delay due to appellate procedure. The United States Supreme Court, reviewing a speedy trial argument based on lengthy appellate procedure in *United States* v. *Loud Hawk*, noted that "there are important public interests in the process of appellate review. The assurance that motions to suppress evidence or to dismiss an indictment are correctly decided through orderly appellate review safeguards both the rights of defendants and the 'rights of public justice.' " 474 U.S. at 313 (citation omitted). Especially where, as in the present case, the trial was delayed in order to consider worthy questions on appeal, raised in good faith, we are not persuaded that the system has prejudiced defendant. Defendant's right to speedy trial has not been violated, and denial of his motion to dismiss was not error.

*Affirmed.*

### On Motion For Reargument

Appellant's motion to reargue under V.R.A.P. 40 is denied. The motion does not state points of law or fact, overlooked or misapprehended by the Court, which would affect the result. We have, however, recalled the opinion and redrafted certain portions, primarily to clarify our discussion of defendant-appellant's speedy trial argument. The revisions do not change the result.

*Motion for reargument denied.*